UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                  Plaintiff,<br><br>v.<br><br>GUSTAVO SOZA-SOTO,<br><br>                                  Defendant. | Case No.: 19-cr-684-GPC<br><br>**ORDER DENYING MOTION FOR COMPASSIONATE RELEASE**<br><br>**[ECF No. 36]** |

Defendant Gustavo Soza-Soto ("Soza") has filed a motion seeking compassionate release or reduction of his sentence under 18 U.S.C. § 3582(c). ECF No. 36. The Government opposes. ECF No. 46 ("Opp."). For the reasons that follow, Soza's motion is DENIED.

## I.    BACKGROUND

Soza was convicted by guilty plea of one count of Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(A)(1) and 846. ECF Nos. 18, 31. Soza was sentenced to a term of imprisonment of 60 months, followed by 4 years of supervised release. ECF No. 31. Soza is serving his sentence at the privately-run Reeves County Detention Center ("Reeves"). ECF No. 36 at 2. Soza has served about 22 months, or about one third of his sentence.

1

Soza is 40 years old and suffers from diabetes, hypertension, and obesity. *Id.* at 7–10; ECF No. 21 ("Presentence Investigation Report" or "PSR") at 2, 8. He contends that he also has received inadequate medical care at Reeves, stating that he "has repeatedly experienced problems with receiving the medication that he must take on a daily basis in order to manage his diabetes" which "has resulted in him experiencing dizziness and headaches." ECF No. 36 at 11–12. Soza has presented a declaration from a physician that states shortcomings in his diabetes care while at Reeves may have contributed to an abnormal blood test result Soza recently received. ECF No. 36-1, Ex. D ¶¶ 15, 16. Soza also reports problems with his feet that have not been diagnosed or treated. ECF No. 49-1, Ex. I ¶ 14.

On October 13, 2020, Soza filed the instant motion. ECF No. 36. On October 24, 2020, the Government filed a response. ECF No. 46. On October 28, 2020, Soza filed a reply. ECF No. 50. On November 12, 2020, the Government filed a sur-reply. ECF No. 52.

## II.   DISCUSSION

Soza now moves for release under 18 U.S.C. § 3582(c)(1)(A), which provides, in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, there are two questions before the Court: first, whether Soza has satisfied the administrative exhaustion requirement, and second, whether Soza has demonstrated extraordinary and compelling reasons for a sentence reduction.

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, "amends numerous portions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019) (citing Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019)).  One of the changes resulting from the Act is that it "allows defendants, for the first time, to petition district courts directly for compassionate release." *Id.*  As one district court recently explained:

> The effect of the amendments is that a district judge has the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition or its failure to respond to a prisoner's request for compassionate release in a timely manner. . . . Congress's express purpose in implementing these changes was to expand the use of compassionate release sentence reductions under § 3582(c)(1)(A).  *See, e.g.,* First Step Act, PL 115-391, 132 Stat 5194, 5239 (titling the subsection amending § 3582, "Increasing the Transparency and Use of Compassionate Release"); 164 Cong. Rec. S7314- 02, 2018 WL 6350790 (Dec. 5, 2018) (statement by Senator Cardin, cosponsor of the First Step Act, noting that its purpose was to "expand[s] compassionate release" and "expedite[] compassionate release applications").

*United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *5 (M.D. Tenn. Mar. 4, 2020); *see also United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release.").

### A.   Exhaustion Requirement

Section 3582(c)(1)(A) imposes an exhaustion requirement requiring a defendant to fully exhaust all administrative rights to appeal before a defendant may move the court for release.  The Government concedes that Soza has met the exhaustion requirement by filing this motion after the lapse of 30 days from the time he presented a request for compassionate release to the warden of his facility.  ECF No. 46 at 8 n.8.  The Court therefore turns to the merits of Soza's motion.

### B.   Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons," and only if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  Section 1B1.13 of the Sentencing Guidelines further explains that a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that:

> (1) (A) Extraordinary and compelling reasons warrant the reduction; or
>
> . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) The reduction is consistent with this policy statement.

Application Note 1 to this Guidelines provision enumerates certain circumstances constituting "extraordinary and compelling reasons" that justify a sentence reduction, including certain medical conditions, advanced age, certain family circumstances, or some "other" reason "[a]s determined by the Director of the Bureau of Prisons."  The

Note specifies that "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" constitutes "extraordinary and compelling reasons" which justify compassionate release.

Soza argues that his diabetes, obesity, and hypertension constitute extraordinary and compelling reasons justifying his release given the COVID-19 pandemic. The Government acknowledges that Type 2 diabetes and obesity are risk factors for developing severe illness were Soza to contract COVID-19.[1]

The Court finds that the heightened risks that Soza faces based on his medical conditions if he were to contract COVID-19 weigh in favor of his release. Both diabetes and obesity are factors identified by the Centers for Disease Control and Prevention ("CDC") that heightens the risk of severe injury for those who contract COVID-19, while those suffering from hypertension "might be at an increased risk for severe illness." *See People Who Are at Higher Risk for Severe Illness*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Any incarcerated person with one of the underlying conditions identified by the CDC is unlikely to be able "to provide self-care within the environment of a correctional facility" to avoid contracting COVID-19. U.S. Sentencing Guidelines § 1B1.13 cmt. 1(A)(ii). This is especially true for defendants like Solis who are at high risk of contracting severe cases of COVID-19. *See United States v. Ramos*, 450 F.Supp.3d 63, 65 (D. Mass. 2020) ("[I]t is not possible for a medically vulnerable inmate . . . to isolate himself in this institutional setting."). Therefore, as the Government does not

---

[1] The Government does not argue that Soza's conditions do not meet the "extraordinary and compelling" reason standard, but makes the argument that Soza's mild obesity and complaints about his medical care, which the Government disputes, do not warrant his early release. ECF No. 46 at 9, 15-18; ECF No. 52 at 2.

dispute the finding, the Court finds Soza's health conditions present extraordinary and compelling reasons under Section 3582.

Before determining if release is warranted, the Court must also take into account public safety and the Section 3353(a) sentencing factors. 18 U.S.C. §§ 3553(a)(2)(C), 3582(c)(1)(A)(ii); U.S.S.G. 1B1.13(2). These factors include, among other things, the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense and provide just punishment; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Soza argues that these factors favor his release, given that he has no other criminal history, has demonstrated his desire to rehabilitate, and, if released, will return to a supportive family environment in Mexicali, Mexico. Soza further contends that his sentence has already been more harsh than anticipated at the time of sentencing because of the threat of COVID-19 and obstacles to medical care he has faced in custody, rendering a sentence of time served appropriate. The Government, pointing to Soza's repeated and sustained involvement in drug trafficking at a high level, argues that he poses a danger to the community and that a sentence of time served would not reflect the severity of the offense and would create unwarranted sentencing disparities. The Government also contends that Soza's Immigration and Customs Enforcement ("ICE") detainer weighs against his release.[2]

---

[2] The Government also makes arguments regarding the severity of Soza's medical issues in its discussion of the Section 3553(a) factors, but because the Court has already determined that Soza's diabetes, obesity, and hypertension, in light of the spread of COVID-19 in detention facilities, constitute extraordinary and compelling reasons for his release, the Court finds that "the need for the sentence imposed [] to provide the defendant with needed . . . medical care . . . in the most effective manner" counsels in favor of his release. 18 U.S.C. § 3553(a)(2). Regardless of the factual disputes surrounding the provision of Soza's diabetes medication and care for his foot, the Court recognizes that Soza's inability to protect himself from COVID-19 while in custody must be considered in its evaluation of the sentencing factors.

The sentencing guidelines indicate that courts should look to 18 U.S.C. § 3142(g) for guidance in determining whether the defendant poses a danger to the safety of any other person or to the community. U.S.S.G. 1B1.13(2). Section 3142(g) sets out a number of factors for a court to consider when evaluating its ability to assure the safety of other people and the community, including "the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance[.]" 18 U.S.C. § 3142(g)(1). Though not all offenses involving controlled substances indicate that the defendant may continue to pose a danger to the public, the Court notes that Soza's conduct involved working with others to import 50 to 100 kilograms of cocaine on a weekly basis. PSR at 5. Soza himself negotiated the price for receiving and storing the cocaine loads in Calexico, and he received $28,000 to be used in making a payment for the cocaine, facts which suggest Soza was vested with a relatively high degree of responsibility in the drug trafficking operation. *Id.* at 4-6. Other district courts have denied compassionate release when the defendant had a higher-level role in a drug trafficking scheme, citing concerns about public safety. *Compare United States v. Sandoval*, No. CR14-5104RBL, 2020 WL 3077152, at *6 (W.D. Wa. June 10, 2020) (denying compassionate release because defendant "lead a drug trafficking organization" and "[n]othing about the COVID-19 pandemic reduces the danger of drugs"); *United States v. Sanders*, No. 3:17-CR-31-MOC-DCK-1, 2020 WL 7033963, at *3 (W.D.N.C. Nov. 30, 2020) (finding defendant posed a danger to the community given her large role in running a "stash house" for drug trafficking organization), *with United States v. Cruz*, 467 F. Supp. 3d 958, 962 (D. Or. 2020) (granting compassionate release where defendant "played a minor role in the drug trafficking organization, mainly receiving and delivering packages, and had no significant decision-making authority in the organization"). The Court recognizes that Soza has had no disciplinary infractions while in custody, has taken several courses to work towards rehabilitation, and has the support of his family members in Mexicali. However, given the nature of his offense and the fact that the Court would

7

be unable to impose conditions of supervised release when Soza returns to Mexico, the Court cannot overlook the potential danger Soza's release would pose.

As for the other Section 3553 sentencing factors, the Court finds that on balance, these also weigh against reducing Soza's sentence to time served.  Soza has served only about one third of his 60-month sentence for a serious drug distribution offense, and a sentence of time served would be far below the guideline range.  The fact that he will be deported to Mexico upon his release also prevents the Court from imposing other, non-custodial conditions that would ensure his sentence reflects of the severity of the offense and would deter future offenses.  Indeed, many courts, including this Court, have granted motions for a reduction of sentence where the defendant had served a relatively small part of their sentence, *e.g.*, *United States v. Galaz*, No. 15-CR-02559-GPC, --- F. Supp. 3d ---, 2020 WL 4569125, at *6 (S.D. Cal. Aug. 7, 2020); *United States v. Castillo*, No. CR H-08-146-01, 2020 WL 2820401, at *1, 5 (S.D. Tex. May 29, 2020), and the fact that a defendant will be deported upon release is not dispositive in determining whether to grant a motion under Section 3582, *e.g.*, *United States v. Guntipally*, No. 16-CR-00189-LHK, 2020 WL 6891827, at *4 (N.D. Cal. Nov. 23, 2020); *United States v. Olawoye*, No. 1:15-CR-00172-AA-5, 2020 WL 4559816, at *5–6 (D. Or. Aug. 7, 2020).  However, courts must evaluate these factors in light of the facts of the case at hand.

Although the Court recognizes the serious health risks Soza faces while in custody, the Court finds that releasing Soza after having completed a third of his sentence without the possibility of home confinement or continuing supervision is not warranted under the Section 3582.

\ \ \
\ \ \
\ \ \
\ \ \
\ \ \

### III. CONCLUSION

For the reasons set forth above, the Motion for Compassionate Release is **DENIED**.

**IT IS SO ORDERED.**

Dated:  December 9, 2020

Hon. Gonzalo P. Curiel
United States District Judge